NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORBERTO GONZALEZ, | Civil Action No.: 17-11993 |
| Plaintiff, | |
| v. | OPINION |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**CECCHI, District Judge.**

**I.      INTRODUCTION**

Before the Court is Plaintiff Norberto Gonzalez's ("Plaintiff" or "Gonzalez") appeal seeking review of a final determination by the Commissioner of the Social Security Administration ("Commissioner") denying his application for supplemental security income under the Social Security Act ("SSA"). The issue to be decided is whether the Commissioner's denial of benefits is supported by substantial evidence. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

**II.     BACKGROUND**

**A.  Procedural History**

Plaintiff applied for supplemental security income on July 31, 2013, alleging disability as of January 1, 2011. Tr.[1] at 87. The application was denied initially on November 12, 2013. Id. On November 2, 2015, a hearing was held before an ALJ. Id. The ALJ issued a decision on

---

[1] "Tr." refers to the certified record of the administrative proceedings. ECF No. 7.

December 24, 2015 finding that, despite having severe impairments, Plaintiff was able to perform jobs that existed in significant numbers in the national economy and was therefore not disabled as defined by the SSA. Id. at 84–98.  Plaintiff requested review of the decision and the Appeals Council subsequently denied the request.  Id. at 2.  On November 22, 2017, Plaintiff instituted this action. ECF No. 1.

### B. Factual Background

At the time of his administrative hearing, Plaintiff was fifty-six years old. Tr. at 97. Plaintiff previously worked as a personal care attendant from 2000 to 2002. Id. at 113.  Plaintiff then worked part-time at Party City in 2005 and as a deli clerk at Shop Rite from 2006 to 2007. Id. at 113–115.  Plaintiff has not been employed since 2007.  Id. at 113.

Plaintiff suffers from major depressive disorder, generalized anxiety disorder, hypertension, gallstones, and human immunodeficiency virus ("HIV"). Id. at 89.  Plaintiff is generally able to do housework, shop, care for his partner, and cook meals. Id. at 91.  Plaintiff is generally able to grocery shop on his own, although he may require assistance when buying heavier items and suffers from fatigue and cramping when walking for more than fifteen minutes. Id. at 89.

## III.  LEGAL STANDARD

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). *See also* 42 U.S.C. § 405(g).  Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are

2

rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

    **B.  Determining Disability**

Pursuant to the SSA, in order to be eligible for benefits, a plaintiff must show he is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)).

The SSA follows a five-step, sequential evaluation to determine whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the plaintiff is currently engaged in gainful activity. *Sykes*, 228 F.3d at 262. Second, if he is not, the ALJ determines whether the plaintiff has an impairment that limits his ability to work. *Id*. Third, if he has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. *Id*. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of his impairment. *Id.* at 263. Fourth, the ALJ must consider whether the plaintiff's RFC is enough to perform his past relevant work. *Id*. Fifth, if his RFC is not enough, the ALJ must determine whether there is other work in the national economy the plaintiff can perform. *Id.*

The evaluation continues through each step unless it is determined at any point that the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden of proof at steps one, two, and four, with the burden shifting to the Commissioner at step five. *Sykes*, 228 F.3d at 263. Neither party bears the burden at step three. *Id*. at 263 n.2.

IV.     **DISCUSSION**

Plaintiff argues that the ALJ erred by: (1) failing to adequately explain why Plaintiff did not meet the individual or combined Listings, including Listings 12.04, 12.06, and 14.08; (2) rejecting Plaintiff's subjective complaints in evaluating his RFC; (3) concluding that Plaintiff had the RFC to perform a full range of all exertional work; and (4) failing to apply the medical-

vocational rules as dispositive or as a framework at step five. ECF No. 19 ("Pl. Br.") at 12–27. Plaintiff alleges that these errors prevent meaningful review of the ALJ's finding that Plaintiff is able to perform work available in the national economy and seeks remand based upon the lack of substantial evidence and errors of law alleged in the Complaint. Id. at 1.  The Court finds that the ALJ properly (1) explained why Plaintiff's impairments did not, individually or in combination, meet the Listings; (2) considered Plaintiff's subjective complaints regarding his RFC; (3) arrived at a RFC for Plaintiff that included numerous nonexertional limitations; and (4) addressed and incorporated the medical-vocational rules properly.  Therefore, the ALJ's judgment is affirmed.

### A. Summary of the ALJ's Findings

At step one, the ALJ found that Plaintiff met the insured status requirements of the SSA and had not engaged in substantial gainful work activity since the application date. Tr. at 89.  At step two, the ALJ determined that Plaintiff had the following severe impairments:  major depressive disorder and generalized anxiety disorder. Id.  The ALJ also concluded that Plaintiff's alleged hypertension, gallstones, and HIV were non-severe impairments. Id.  In his step three analysis, the ALJ found that Plaintiff did "not meet or medically equal the Listing for HIV at 14.08" as Plaintiff's HIV was found to be a non-severe impairment. Id. at 90.  The ALJ also found that Plaintiff's major depressive disorder and generalized anxiety, singularly or in combination, did not meet or medically equal Listings 12.04 or 12.06 because the paragraph B and paragraph C criteria were not satisfied. Id. at 91–92. The ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets, either individually or in combination, the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. Id. at 90.

5

Next, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, with the caveat that Plaintiff must work in a setting where there are few changes to essential job functions and work is judged at the end of the day. Id. at 92. To reach these conclusions, the ALJ evaluated the evidence of record, including medical opinions from state agency consultants, Plaintiff's treating physicians, Plaintiff's partner, and Plaintiff's testimony. Id. at 92–97. Based on this information, the ALJ concluded that the Plaintiff's "subjective complaints and alleged limitations are not fully persuasive and [Plaintiff] retains the ability, despite his limitations, to perform work activities with the limitations set forth above." Id. at 97.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Id. At step five, however, the ALJ established that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform based on his age, education, work experience, and RFC. Id. Based on testimony from a vocational expert, the ALJ determined that Plaintiff would be able to perform occupations such as kitchen helper, photocopy machine operator, or inspector/hand packager. Id. at 98. Therefore, the ALJ concluded that Plaintiff is not disabled as defined in the SSA. Id.

### B. Analysis

Plaintiff argues that the ALJ erred in conducting the Listing analysis, in failing to consider Plaintiff's subjective complaints adequately, in his findings regarding Plaintiff's RFC exertional work capacity; and in applying the medical-vocational rules at step five. The Court disagrees.

#### 1. Listings 12.04, 12.06, and 14.08

With respect to the Listings, the Court finds that the ALJ properly and thoroughly analyzed Plaintiff's impairments to determine whether they met or medically equaled the relevant Listings. Tr. at 89–92. To satisfy a Listing, a Plaintiff must show that all relevant criteria have been met.

*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  The ALJ carefully considered whether Plaintiff's severe mental impairments met Listing 12.04 (covering depressive, bipolar and related disorders) and found that the paragraph B criteria of that Listing (extreme limitation of one, or marked limitation of two, areas of mental functioning) were not met based on the record.  The ALJ determined that the Listing was not met because Plaintiff's activities of daily living only showed mild restriction, his social functioning only showed mild difficulties, his concentration/persistence only showed moderate difficulties, and Plaintiff had no episodes of decompensation for an extended duration of time. Id. at 91.  Based on this thorough analysis, the ALJ determined that "[b]ecause [Plaintiff]'s mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration the 'paragraph B' criteria are not satisfied." Id.  Similarly, the ALJ found that Plaintiff's severe mental impairments failed to establish the paragraph C criteria of Listings 12.04 and 12.06 (a serious and persistent mental disorder that has a medically documented history of at least two years, requires ongoing medical treatment, and makes adapting one's daily life difficult).  The ALJ explained his finding by stating that "[t]here is no evidence that the [Plaintiff] has had repeated episodes of decompensation, or that minimal increases in mental demands or a change in environment would cause him to decompensate, or that he has the inability to function outside a highly supportive living arrangement." Id. at 92.  These findings were based on the ALJ's review of Plaintiff's testimony, medical records, Plaintiff's partner's statement, and the medical opinions of numerous doctors. Id. at 90–92.  Finally, the ALJ clearly did not err in finding that Plaintiff's HIV did not meet the Listing at 14.08 as his analysis at step two clearly found that Plaintiff's HIV was not severe based on the lacked of manifestations of the disease, his recent blood work showing a nearly undetectable viral load, sporadic medication and treatment, and his ability to serve as the primary

7

caregiver for his partner. Id. at 90.  Accordingly, the Court finds that the ALJ did not err at step three of his analysis of whether Plaintiff's impairments, singularly or in combination, met or medically equaled the Listings.

### 2. Plaintiff's Subjective Complaints

Plaintiff next complains that the ALJ erred by rejecting Plaintiff's subjective complaints in evaluating his RFC.  As an initial matter, Plaintiff is incorrect that the ALJ rejected his subjective complaints.  To the contrary, the ALJ credited the Plaintiff's subjective complaints and found that his "impairments could reasonably be expected to cause the alleged symptoms."  The ALJ only rejected Plaintiff's claims about the intensity and limiting effects of these symptoms where the claims were contradicted by the record or completely unsupported. Id. at 93–97.  The ALJ found that Plaintiff's claims regarding the intensity and limiting effects of his severe impairments were contradicted by Dr. Yoo's treatment notes, Plaintiff's infrequent medical treatment, Ms. Katz's inconsistent and contradictory treatment notes, his partner's testimony about Plaintiff's social functioning, Dr. Miller's assessment of Plaintiff's work capacity, and the reports of three state agency medical consultants which were consistent with the record as a whole. Id.

An "ALJ's credibility determinations are entitled to great deference and may not be discarded lightly." *Jones v. Colvin*, No. 13-4831, 2014 U.S. Dist. LEXIS 85526, at *24 (E.D. Pa. June 24, 2014) (citing *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003)).  An ALJ "may reject, in part or in whole, subjective complaints if she finds them not credible based on other evidence in the record." *Id.* (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999) (citing *Baerga v. Richardson*, 500 F.3d 309, 312 (3d Cir. 1975)); *Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993)).  Here, the Court finds that substantial evidence supports the ALJ's credibility determination.  The ALJ specifically reviewed Plaintiff's claims of severe impairment

against medical records, testimony, treatment notes, and the opinions of treating doctors and consulting doctors. Tr. at 93–97. The ALJ properly accepted Plaintiff's alleged symptoms as he found that the symptoms could be caused by his severe impairments, and exercised great care in examining the intensity and limiting effects of those symptoms. The ALJ discussed the evidence presented to him at the hearing and in the record and individually assigned credibility to each piece of evidence from Plaintiff, his partner, various doctors and medical professionals, before concluding that "[c]onsidering the numerous inconsistencies between the [Plaintiff]'s testimony, the evidence of the record, and the medical findings of the treating physicians, I find that [Plaintiff]'s subjective complaints and alleged limitations are not fully persuasive." Given the ALJ's thorough consideration and the deferential standard of review on credibility, the Court finds that the ALJ did not err in his analysis of Plaintiff's subjective complaints.

### 3. Plaintiff's RFC

Third, Plaintiff contends that the ALJ erred by finding that Plaintiff had the RFC to perform a full range of exertional work. This argument blends into the discussion of Plaintiff's subjective complaints above, as Plaintiff primarily takes issue with the ALJ's rejection of his alleged physical pain and suffering. The Court again finds that the ALJ acted properly in his analysis of Plaintiff's physical limitations, as he comprehensively reviewed the medical records before him and based his determinations on the findings of those records and the reports of the treating and reviewing doctors. Tr. at 95–98. The ALJ explained that Plaintiff's medical records showed no manifestation of his HIV, Plaintiff and his partner both testified to Plaintiff's role as the primary caregiver in the household, the treatment notes did not refer to specific physical limitations, and the consulting doctors found no evidence of physical limitations. Tr. at 90–92, 95–97; *see also* ECF No. 25 at 13. To the extent Plaintiff relies heavily on the RFC questionnaire filled out by Ms. Katz, a nurse who

treated Plaintiff, the Court finds that the ALJ properly gave little weight to the form and reports from Ms. Katz based on contradictions in her treatment notes. *See* Tr. at 95–96 ("Little weight is assigned to Ms. Katz's opinion, as it is inconsistent with the record as a whole . . . Ms. Katz's opinion is internally inconsistent with her treatment notes . . . . Ms. Katz's opinion is inconsistent with Dr. Yoo's treatment notes . . . Ms. Katz's opinion is inconsistent with Ms. Anjos' treatment notes . . . Ms. Katz's opinion is inconsistent with Dr. Miller's exam notes."); *see also Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best"). Based upon the foregoing, the Court finds no merit in Plaintiff's argument that the ALJ erred in finding that Plaintiff had the RFC to perform a full range of exertional work.

### 4. Application of the Medical-Vocational Rules

Plaintiff's final argument is that the ALJ erred by failing to apply the medical-vocational rules as dispositive or as a framework at step five. This argument appears to be an attempt to rehash Plaintiff's prior contentions that his HIV and mental impairments were so severe that he could not perform any job available in the national economy. Pl. Br. at 24–25. The Court has already determined that the ALJ carefully and thoroughly reviewed the evidence, testimony, and reports concerning the severity of Plaintiff's impairments in steps two and three. At step five, the ALJ properly considered Plaintiff's RFC, age, education, and work experience along with medical-vocational guidelines to determine that Plaintiff could perform work at all exertional levels. Tr. at 97–98. The ALJ then asked the vocational expert to take into account Plaintiff's nonexertional limitations and identify any jobs existing in the national economy which Plaintiff could perform. Id. The ALJ properly relied upon the vocational expert's determination that Plaintiff could, despite his severe mental impairments and nonexertional limitations, perform work as a kitchen helper, a

10

photocopy machine operator, or an inspector/hand packager. Id. at 98. Plaintiff has not demonstrated flaws in the ALJ's step five analysis, and the Court finds that the ALJ's step five findings are supported by substantial evidence.

## V. CONCLUSION

For the foregoing reasons, the ALJ's decision is hereby affirmed. An appropriate order accompanies this Opinion.

**DATED:** May 28, 2020

_____
CLAIRE C. CECCHI, U.S.D.J.